# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KATHRYN TRAINOR, individually and on behalf of all others similarly situated,

                                  *Plaintiff*,

vs.

IGLOO PRODUCTS CORP.,

                                  *Defendant*.

**Civil Action** _____

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff, Kathryn Trainor ("Plaintiff"), brings this Class Action Complaint against Defendant, Igloo Product Corp. ("Defendant"), individually and on behalf of all others similarly situated, and alleges, upon knowledge as to Plaintiff's own actions and to counsels' investigation, review of public documents and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this class action lawsuit on behalf of themself, and all others similarly situated who purchased the Recalled Igloo 90QT Flip & Tow Rolling Cooler in Tactical Gray Body and Deep Slate Stone Lid, the Igloo 90QT Flip & Tow Rolling Cooler in White Body and Lid, Recalled Igloo 90QT Flip & Tow Rolling Cooler in Sapphire Blue Body and Lid, Recalled Igloo 90QT Flip & Tow Rolling Cooler in Dark Slate Blue Body, White Lid, Recalled Igloo 90QT Flip & Tow Rolling Cooler in White Body, Ash Gray Lid, the Recalled Igloo 90Qt Flip & Tow Rolling Cooler in Carbonite Body, Aegean Sea Lid[1] (the "Recalled Coolers" or "Products") because the recalled coolers have a tow handle that can pinch consumers' fingertips against the cooler, posing fingertip amputation and crushing hazards.

---

[1] https://www.cpsc.gov/Recalls/2025/Igloo-Recalls-More-Than-One-Million-90-Quart-Rolling-Coolers-Due-to-Fingertip-Amputation-and-Crushing-Hazards (last accessed on February 17, 2025)

2.      The Product is formulated, designed, manufactured, advertised, sold, and distributed by Defendant or its agents to consumers, including Plaintiff, across the United States.

3.      The Product is described as follows: This recall involves the Igloo 90 Qt. Flip & Tow Rolling Coolers manufactured prior to January 2024 in Tactical Gray Body and Deep Slate Stone Lid, the word IGLOO printed on the side of the coolers.[2]

4.      The following cooler models with tow handles are included in the recall[3]:

| Model / SKU # | Description | Date Codes |
|---|---|---|
| 34143 | LATITUDE 90 ROLLER | 07/2021 – 12/2023 |
| 27019 | MAXCOLD LATITUDE 90 ROLLER POWERADE | 11/2020 – 12/2023 |
| 34202 | MAXCOLD 90 ROLLER | 07/2021 – 12/2023 |
| 34241 | LATITUDE 90 ROLLER MAXCOLD | 07/2021 – 12/2023 |
| 34389 | LATITUDE 90 ROLLER | 08/2021 – 12/2023 |
| 34424 | LATITUDE 90 ROLLER | 10/2019 – 12/2023 |
| 34488 | LATITUDE 90 ROLLER MAXCOLD | 03/2019 – 12/2023 |
| 34506 | LATITUDE 90 ROLLER | 08/2021 – 12/2023 |
| 34527 | LATITUDE 90 ROLLER | 09/2019 – 12/2023 |
| 34547 | LATITUDE 90 ROLLER MAXCOLD | 09/2019 – 12/2023 |

---

[2] Id.
[3] Id.

| 34553 | LATITUDE 90 ROLLER MAXCOLD | 09/2019 – 12/2023 |
|---|---|---|
| 34577 | LATITUDE 90 ROLLER | 09/2019 – 12/2023 |
| 34578 | LATITUDE 90 ROLLER | 09/2019 – 12/2023 |
| 34591 | LATITUDE 90 ROLLER MAXCOLD | 11/2019 – 12/2023 |
| 34608 | LATITUDE 90 ROLLER MAXCOLD | 12/2019 – 12/2023 |
| 34619 | LATITUDE 90 ROLLER | 01/2020 – 12/2023 |
| 34624 | LATITUDE 90 ROLLER MAXCOLD | 01/2020 – 12/2023 |
| 34689 | MAXCOLD LATITUDE 90 ROLLER | 03/2020 – 12/2023 |
| 34724 | MAXCOLD LATITUDE 90 ROLLER | 09/2020 – 12/2023 |
| 34734 | LATITUDE 90 ROLLER | 09/2020 – 12/2023 |
| 34750 | LATITUDE 90 ROLLER | 09/2020 – 12/2023 |
| 34752 | MAXCOLD LATITUDE 90 ROLLER | 09/2020 – 12/2023 |
| 34775 | LATITUDE 90 ROLLER | 09/2020 – 12/2023 |
| 34776 | ECOCOOL LATITUDE 90 ROLLER MAXCOLD | 10/2020 – 12/2023 |

| 34789 | MAXCOLD LATITUDE 90 ROLLER | 11/2020 – 12/2023 |
|---|---|---|
| 34799 | LATITUDE 90 ROLLER | 12/2020 – 12/2023 |
| 34800 | MAXCOLD LATITUDE 90 ROLLER | 01/2021 – 12/2023 |
| 34818 | MAXCOLD LATITUDE 90 ROLLER | 03/2021 – 12/2023 |
| 34841 | LATITUDE 90 ROLLER MAXCOLD | 05/2021 – 12/2023 |
| 34844 | SPORTSMAN 90 LATITUDE ROLLER | 04/2021 – 12/2023 |
| 34869 | LATITUDE 90 ROLLER | 06/2022 – 12/2023 |
| 34993 | MAXCOLD LATITUDE 90 ROLLER | 07/2023 – 12/2023 |
| 34999 | LATITUDE 90 ROLLER | 08/2023 – 12/2023 |
| 35003 | MAXCOLD 90 QUART ECO ROLLER | 06/2023 – 12/2023 |
| 35019 | MAXCOLD LATITUDE 90 ROLLER | 07/2023 – 12/2023 |
| 35044 | MAXCOLD LATITUDE 90 | 10/2023 – 12/2023 |
| 35045 | MAXCOLD LATITUDE 90 | 10/2023 – 12/2023 |
| 35052 | LATITUDE 90 ROLLER | 10/2023 – 12/2023 |
| 35053 | LATITUDE 90 ROLLER | 10/2023 – 12/2023 |

| 35054 | LATITUDE 90 ROLLER | 10/2023 – 12/2023 |
|---|---|---|
| 35065 | LATITUDE 90 ROLLER MAXCOLD | 11/2023 – 12/2023 |
| 49870 | LATITUDE 90 ROLLER | 09/2018 – 12/2023 |
| 49928 | LATITUDE 90 ROLLER | 08/2019 – 12/2023 |
| 49937 | LATITUDE 90 ROLLER | 08/2018 – 12/2023 |
| 49938 | LATITUDE 90 ROLLER | 09/2018 – 12/2023 |
| 50680 | MAXCOLD LATITUDE 90 QUART | 09/2023 – 12/2023 |

5.      The Product was manufactured by Defendant, distributed to other corporations and then sold to consumers across the United States. The Product was sold in the retail companies such as Costco, Target, Academy, Dick's Sporting Goods, and other nationwide companies and online at Amazon.com and Igloocoolers.com from January 2019 through January 2025. [4]

6.      Through marketing and sale, Defendant represented that the Products are safe and effective for their intended use as a Cooler.

7.      Other manufacturers formulate, produce, and sell non defective Coolers with formulations and production methods that do not cause the products to pinch consumers' fingertips against the cooler, posing fingertip amputation and crushing hazards, inherent with Defendant's Product is demonstrably avoidable.

8.      Feasible alternative formulations, designs, and materials are currently available and were available to Defendant at the time the Product was formulated, designed, and manufactured.

[4] Id.

9.      At the time of his purchase, Defendant didn't notify Plaintiff and similarly situated consumers, of the Product's fingertip amputation and crushing hazard through the product labels, instructions, other packaging, advertising, or in any other manner, in violation of the state and federal law.

10.     Plaintiff purchased the Product while lacking the knowledge that the Product could pinch consumers' fingertips against the cooler and harm those who use the Products, thus causing serious harm to those who use such Products.

11.     Because Plaintiff and all consumers purchased the worthless and dangerous Products, which they purchased under the presumption that the Products were safe, they have suffered losses.

12.     As a result of the above losses, Plaintiff seeks damages and equitable remedies.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, the relevant portion of which is codified at 28 U.S.C. §1332(d). The aggregated claims of the individual Class Members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action in which more than two-thirds of the proposed plaintiff class, on the one hand, and Defendant, on the other, are citizens of different states.

14.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

15.     Igloo sells its products internationally, throughout the United States and within this judicial district.  This Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself to this District's jurisdiction and authority, given Defendant's minimum contacts within this District through Defendant's extensive marketing, advertising, and sale of the

Product throughout this District. See *Mallory v. Norfolk Southern Railway Co.*, 143 S.Ct. 2028, 600 U.S. 122, 216 L.Ed. 815 (2023).

16.    Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, given that Defendant sells and distributes their Products throughout the United States and within this District.

## PARTIES

17.    Plaintiff Kathryn Trainor is a resident and citizen of Taunton, Massachusetts.

18.    Defendant Igloo Products Corp. is incorporated in Katy, Texas. Defendant is a company that operates the manufacture and retail of the Products in the State of Pennsylvania, and throughout the United States.

19.    Upon information and belief, the planning and execution of the advertising, marketing, labeling, packaging, testing, and/or corporate operations concerning the Products, and the claims alleged herein were primarily carried out at Defendant's headquarters and facilities

## FACTUAL ALLEGATIONS

20.    Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

21.    Plaintiff Kathryn Trainor bought the Igloo 34506 Latitude 90 Roller White for personal household use in Taunton, Massachusetts.

22.    While carrying the cooler, Plaintiff has been pinched by the handle multiple times, causing discomfort and potential injury. This issue not only affects usability but also raises safety concerns.

23.    Defendant is a well-established corporation known for its production, distribution, and importation of the Product and related products.

7

## The Product

24.     The Product at hand is defective and not safe for use.

25.     Unfortunately, the Product has a risk of pinching consumer's fingertips against the cooler, posing fingertip amputation and crushing hazards.

26.     The Product as seen below[5]:



---

[5] Add website were pictures come from.

**Recalled Igloo 90QT Flip & Tow Rolling Cooler in Tactical Gray Body and Deep Slate Stone Lid**



**Recalled Igloo 90QT Flip & Tow Rolling Cooler in White Body and Lid**



**Recalled Igloo 90QT Flip & Tow Rolling Cooler in Sapphire Blue Body and Lid**



**Recalled Igloo 90QT Flip & Tow Rolling Cooler in Dark Slate Blue Body, White Lid**



**Recalled Igloo 90QT Flip & Tow Rolling Cooler in White Body, Ash Gray Lid**



**Recalled Igloo 90Qt Flip & Tow Rolling Cooler in Carbonite Body, Aegean Sea Lid**

**Fraudulent Omissions and Loss of Benefit of the Bargain are Actionable**

27.     Plaintiff bargained for a Cooler that was safe to use. Defendant's Product was, and still is, unsafe due to the fingertip amputation and crushing hazards that can be found in the Product.

28.     As a result of the Product, Plaintiff, and all others similarly situated, were deprived the benefit of their bargain given that Defendant sold them a product containing a defect.

29.     The dangerous defect inherent to the Product renders them unmerchantable and unfit for their normal intended use as a safe to use cooler.

30.     The Product is not fit for its intended use by humans as they expose consumers to the fingertip amputation and crushing risk.

31.    Plaintiff suffered an injury-in-fact due to an economic loss because the Product was defective at the moment of purchase therefore the injury was concrete the moment Plaintiff purchased the Product. The economic harm can be seen as overpayment, loss of value or loss of usefulness emanating from the loss of the benefit of the bargain. Additionally, there is a loss of resale value.

32.    The Recall does not completely compensate Plaintiff for all damages incurred, even when there are free repairs, replacement, or monetary refunds including benefit of the bargain damages resulting in diminished value, loss of use, and overpayment of the Product which is worth less than products sold without the undisclosed defect and incidental damages. Plaintiff also sustained loss of resale value.

33.    Plaintiff seeks to recover damages because the Product is adulterated, defective, worthless, and unfit for safe human use due to the fingertip amputation and crushing hazards contained within the Product.

34.    Defendant engaged in fraudulent, unfair, deceptive, misleading, and/or unlawful conduct stemming from its omissions surrounding the fingertip amputation and crushing hazards affecting the Product.

35.    Indeed, no reasonable consumer, including Plaintiff, would have purchased the Product had they known of the material omissions of material facts regarding the possibility of fingertip amputation and crushing hazards.

36.    Plaintiff intended the Product for normal household use but instead received a product with a defective tow handle that exposed them to a risk of fingertip amputation and crushing hazard.

37.    Nowhere on the Product's packaging did Defendant disclose that the Product could present a risk of fingertip amputation and crushing hazards to the user.

38.    If Plaintiff had been aware of the risk of the fingertip amputation and crushing hazards in the Product, they would not have purchased the Products or would have paid significantly less.

39.    As a result of Defendant's actions, Plaintiff has incurred damages.

## CLASS ACTION ALLEGATIONS

40.    Plaintiff brings this action on behalf of herself and as a class action, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the class and subclass are defined as follows:

**Nationwide Class:** All persons within the United States who purchased the recalled Product Igloo 90 Qt. Flip & Tow Rolling Coolers manufactured prior to January 2024.

**Pennsylvania Subclass:** All persons within the State of Pennsylvania who purchased the recalled Product Igloo 90 Qt. Flip & Tow Rolling Coolers manufactured prior to January 2024.

41.    Together, the Nationwide Class and Pennsylvania Subclass will be collectively referred to as the "Class" or "Classes". Members of these Classes will be referred to as "Class Members".

42.    Plaintiff qualifies as a member of each of the proposed classes in the preceding paragraphs.

43.    Excluded from the Classes are the following individuals and/or entities: Defendants and Defendants' parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendants have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family.

44. The proposed class definitions may be amended or modified from time to time.

45. The particular members of the (i) Nationwide Class, and (ii) Pennsylvania Subclass are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable from the information and records in the possession or control of Defendant or its affiliates and agents and from public records.

46. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

47. The Proposed Classes are so numerous that the joinder of all members is impracticable.

48. This action has been brought and may be properly maintained on behalf of the classes proposed herein under Federal Rule of Civil Procedure 23.

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

49. Upon information and belief, the Class is so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information is in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, Electronic Mail, internet postings, social media, and/or published notice.

**Superiority: Fed. R. Civ. P. 23(b)(3)**

50. A class action is the appropriate method for the fair and efficient adjudication of this controversy. The presentation of separate incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of Class Members to protect their interests. In

addition, it would be impracticable and undesirable for each member of the Classes who suffered an economic loss to bring a separate action. The maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class Members

**Typicality: Fed. R. Civ. P. 23(a)(3)**

51.    Plaintiff's claims are typical of those of the Class in that the Class Members uniformly purchased Defendant's Product and were subjected to Defendant's uniform merchandising materials and representations at the time of purchase.

**Adequacy: Fed. R. Civ. P. 23(a)(4)**

52.    Plaintiff is an adequate class representative because her interests do not conflict with the interests of the Class that she seeks to represent. Plaintiff has retained counsel competent and highly experienced in complex and class action litigation, and she intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

**Existence and Predominance of Common Questions of Law and Fact Fed. R. Civ. P. 23(a)(2) and 23(b)(3)**

53.    There are questions of fact and law common to the Classes that predominate over any question affecting only individual members. Those questions, each of which may also be certified under Rule 23(c)(4), include without limitation.

   a.  Whether Defendant negligently failed to exercise reasonable care in the formulation, design, manufacturing, promotion, marketing, advertising, packaging, labeling, distribution, and/or sale of the Product;

   b.  Whether Defendant sold the defective Product, that were unreasonably dangerous to consumers such as Plaintiff and members of the Class;

    c.    Whether Defendant failed to adequately warn Plaintiff and the Class of the dangers with respect to the defective Product;

    d.    Whether Defendant was negligent for failure to warn;

    e.    Whether Plaintiff and the Class suffered Damages as a result of the defective Product;

    f.    Whether Defendant was negligent for failure to test;

    g.    Whether Defendant's advertising, merchandising, and promotional materials directed to Plaintiff were deceptive regarding the risks posed by Defendant's Product;

    h.    Whether Defendant made representations regarding the safety of the Product;

    i.    Whether Defendant omitted material information regarding the safety of the Product;

    j.    Whether Defendant's Product was merchantable;

    k.    Whether Defendant violated the consumer protection statutes invoked herein;

    l.    Whether Defendant's conduct alleged herein was fraudulent; and

    m.    Whether Defendant was unjustly enriched by sales of the Products

54.    The questions set forth above predominate over any questions affecting only individual persons concerning sales of Defendant's Products throughout the United States and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to the other available methods for the fair and efficient adjudication of Plaintiff's claims.

**Insufficiency of Separate Actions: Fed. R. Civ. P. 23(b)(2)**

55.    Absent a representative class action, members of the Class would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue

burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. The proposed Class thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1). Counsel is experienced in the litigation of civil matters, including the prosecution of consumer protection class action cases.

**Declaratory and Injunctive Relief**

56.    Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Class Members as described below, with respect to the members of the Class as a whole. Plaintiff seeks to certify Class to enjoin Defendant from selling or otherwise distributing the Product as labeled until such time that Defendant can demonstrate to the Court's satisfaction that the Product confers the advertised benefits and are otherwise safe to use as intended.

<u>CAUSES OF ACTION</u>

<u>COUNT I</u>
**Violation of the Pennsylvania Unfair Trade Practice and Consumer Protection Law (PUTPCPL) (73 Pa Stat 201)**
**(On Behalf of Plaintiff and Subclass)**

57.    Plaintiff incorporates Paragraphs 1-56 as if fully set forth herein.

58.    Plaintiff brings this count on behalf of herself and the Classes.

59.    Defendant engaged in unfair or deceptive acts or practices in violation of the PUTPCPL by knowingly misrepresenting, omitting, or concealing material facts in connection with the sale of the defective coolers.

60.    Defendant also engaged in deceptive trade practices in violation of the PUTPCPL by making false statements, failing to disclose material facts, and engaging in unfair business practices that caused Plaintiff harm.

17

61.     Defendant's conduct included false or misleading statements regarding the quality, effectiveness, and nature of the Coolers, which a reasonable consumer would rely upon in making a purchase decision.

62.     Defendant engaged in a course of conduct that was likely to mislead consumers, including Plaintiff, about the true characteristics of the product.

63.     Defendant knowingly and intentionally deceived consumers by advertising, marketing, and selling the products under false pretenses.

64.     Defendant's conduct was unfair, oppressive, and substantially injurious to consumers, creating an unfair advantage over law-abiding competitors.

65.     Defendant engaged in, and continues to engage in, the above-reference deceptive acts and unfair trade practices in the conduct of business, trade, and commerce, including by omitting material facts regarding the tow handle within its Product.

66.     Plaintiff relied on Defendant's deceptive acts, unfair trade practices, and omissions, which are described above. Plaintiff has suffered injury in fact and lost money as a result of Defendant's unlawful, unfair, and fraudulent practices.

67.     Defendant's wrongful conduct caused Plaintiff and the Classes to suffer an ascertainable loss by causing them to incur substantial expense in purchasing Defendant's Product which they reasonably believed was safe to use as intended. Plaintiff and the Classes have suffered an ascertainable loss by receiving other than what was promised.

68.     Plaintiff and the Class Members would not have purchased the Product at issue, or would have paid less, had they known the truth about the Product.

69.     If Defendant had not sold its Product that contained falsely advertised information, Plaintiff and the Class Members would not have suffered the extent of damages caused by Defendant's sales.

70.     As a direct and proximate result of Defendant's business practices, Plaintiff and the Class Members suffered injury in fact and lost money or property because they purchased and paid for products they otherwise would not have. Plaintiff and the Class Members are entitled to injunctive relief and attorneys' fees and costs.

71.     Pursuant to the PUTPCPL, Plaintiff and the Class Members seek an order of this Court requiring Defendant to disgorge all ill-gotten gains and awarding Plaintiff and the Class Members full restitution of all monies wrongfully acquired by it by means of such "unlawful" and "unfair" conduct, so as to restore any and all monies to Plaintiff and the Class Members which were acquired and obtained by such "unlawful" and "unfair" conduct, and which ill-gotten gains are still retained by Defendant.

**COUNT II**
**Unjust Enrichment**
**(On behalf Plaintiff and the Classes)**

72.     Plaintiff incorporates Paragraphs 1-56 as if fully set forth herein.

73.     Plaintiff brings this count on behalf of herself and the Classes.

74.     Through wrongful acts or omissions Defendant convinced Plaintiff and Class Members to pay a premium price for a defective product instead of a product free from defects as they were led to believe.

75.     Plaintiff, and the other members of the Classes, conferred benefits on Defendant in the form of monies paid to purchase Defendant's defective and diminished in value or worthless Product. These monies were no gifts or donations but were given in exchange for the Product.

76.     Defendant voluntarily accepted and retained these benefits under conditions where it was unjust to do so as Plaintiff and Class Members paid higher prices for a defective Product as a result of the wrongful acts or omission by Defendant given the Product defect. Defendant has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiff and the Class Members.

77.     Because this benefit was obtained unlawfully, namely by selling and accepting compensation for a Product unfit for human use, it would be unjust and inequitable for Defendant to retain the benefit without paying the value thereof.

78.     Defendant received benefits in the form of revenues from purchases of the Product to the detriment of Plaintiff, and the other members of the Classes, because Plaintiff, and members of the Classes, purchased mislabeled products that were not what Plaintiff and the Classes bargained for and were not safe and effective, as claimed.

79.     Defendant has been unjustly enriched in retaining the revenues derived from the purchases of the Product by Plaintiff and the other members of the Classes. Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Product was misleading to consumers, and there is a manifest defect which caused injuries to Plaintiff, and members of the Classes, because they would have not purchased the Product had they known the true facts.

80.     Plaintiff and members of the Classes have been injured by reason of this unjust enrichment. Plaintiff alleges unjust enrichment in the alternative to an adequate remedy at law.

81.     Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Classes for its unjust enrichment, as ordered by the Court.

### COUNT III
**Breach of Express Warranty**
**(On behalf of Plaintiff and the Classes)**

82.     Plaintiff incorporates paragraphs 1-56 as if fully set forth herein.

83.     Plaintiff brings this count on behalf of herself and the Classes.

84.     Plaintiff, and each member of the Classes, formed a contract with Defendant at the time they purchased the Product.

85.     The terms of the contract include the promises and affirmations of fact, that the Product was safe to use, made by Defendant on the Product's packaging and through marketing and advertising.

86.     This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between Plaintiff and the members of the Classes and Defendant.

87.     As set forth above, Defendant purports through its advertising, labeling, marketing, and packaging, to create an express warranty that the Product is safe to use.

88.     Plaintiff and the members of the Classes performed all conditions precedent to Defendant's liability under this contract when they purchased the Product.

89.     Defendant breached express warranties relating to the Product and their qualities because Defendant's Product possessed the capability to harm the consumers at the time of purchase and the Product does not conform to Defendant's affirmations and promises.

90.    As a result of Defendant's breach of warranty, Plaintiff and each Class Member suffered and continues to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

## COUNT IV
### Breach of Implied Warranty
### (On behalf of Plaintiff and the Classes)

91.    Plaintiff incorporates paragraphs 1-56 as if fully set forth herein.

92.    Defendant is engaged in the business of manufacturing, constructing, making, selling, distributing, labeling, advertising, retailing, and/or otherwise placing the Product into the stream of commerce.

93.    The Product is a "good" under the relevant laws, and Defendant knew or had reason to know of the specific use for which the Product, as a good, was purchased.

94.    Defendant's warranty expressly applies to the purchaser of the Product, creating privity between Defendant, Plaintiff and Class Members.

95.    However, privity is not required because Plaintiff and Class Members are the intended beneficiaries of Defendant's warranties and its sale through retailers. Defendant's retailers were not intended to be the ultimate consumers of the Product and have no rights under the warranty agreements. Defendant's warranties were designed for and intended to benefit the consumer only, including Plaintiff and Class Members.

96.    Defendant has been provided sufficient notice of its breaches of implied warranties associated with the Product. Defendant was put on constructive notice of its breach through its review of consumer complaints and other reports.

97.    Had Plaintiff, Class Members, and the consuming public known that the Product could cause harm, they would not have purchased the Product or would have paid less for it.

98.     As a direct and proximate result of the foregoing, Plaintiff and Class Members suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

**COUNT V**
**Breach of Implied Warranty of Merchantability**
**(On behalf of Plaintiff and the Classes)**

99.     Plaintiff incorporates paragraphs 1-56 as if fully set forth herein.

100.    Defendant is a merchant engaging in the sale of goods to Plaintiff and the Classes.

101.    There was a sale of goods from Defendant to Plaintiff and the Classes.

102.    As the developer, manufacturer, marketer, distributor, and/or seller of the defective Product, Defendant impliedly warranted to Plaintiff and the Classes that its Product was fit for their intended purpose in that they would be safe for Plaintiff and the Classes to consume. Contrary to these representations and warranties, the Product is not fit for their ordinary use, and did not conform to Defendant's affirmations of fact and promises included with the packaging.

103.    The implied warranty of merchantability included with the sale of each Product means that Defendant guaranteed that the Product would be fit for the ordinary purposes for which the Product are used and sold and were not otherwise injurious to consumers. The implied warranty of merchantability is part of the basis for the benefit of the bargain between Defendant, Plaintiff and the Class Members.

104.    Defendant breached the implied warranty of merchantability because the Product is not fit for its ordinary purpose of providing reasonably safe for use because the Product has a risk of pinching consumers' fingertips against cooler, posing fingertip amputation and crushing hazards. Therefore, the Product is not fit for its particular purpose.

105.    Defendant breached the implied warranty in the contract for the sale of the Product by knowingly selling to Plaintiff and the Classes a product that Defendant knew would expose Plaintiff and the Classes to health risks, thus meaning Defendant knew that the Product was not fit for its intended use.

106.    Defendant was on notice of this breach, as they were made aware of the adverse health effects caused by risk of pinching consumers' fingertips against cooler, posing fingertip amputation and crushing hazard that can result from the use of their Product.

107.    Plaintiff and the Classes did not receive the goods as bargained for because the goods they received were not merchantable as they did not conform to the ordinary standards for goods of the same average grade, quality, and value.

108.    Plaintiff and members of the Classes are the intended beneficiaries of Defendant's implied warranties.

109.    The Products were not altered by Plaintiff or the members of the Classes.

110.    Plaintiff and members of the Classes used the Products in the ordinary as they were intended to be used.

111.    The Products were defective when they left the exclusive control of Defendant.

112.    The Products were defectively designed and/or manufactured and unfit for their intended purpose as safe to use and Plaintiff and members of the Classes did not receive the goods that they bargained for.

113.    Plaintiff and members of the Classes purchased the Products that contained the Defect, which was undiscoverable by them at the time of purchase and at any time during the class period.

114. As a result of the defect in the Products, Plaintiff and members of the Classes have suffered damages including, but not limited to, the cost of the defective product, loss of use of the product and other related damage.

115. Defendant breached the implied warranty of merchantability to the Plaintiff and Class Members.

116. Thus, Defendant's attempt to limit or disclaim the implied warranties in a manner that would exclude coverage of the Defect is unenforceable and void.

117. Plaintiff and Class Members have been damaged by Defendant's breach of the implied warranty of merchantability.

118. Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

<u>COUNT VI</u>
**Fraudulent Concealment or Fraud by Omission**
**(On behalf of Plaintiff and the Classes)**

119. Plaintiff incorporates paragraphs 1-118 as if fully set forth herein.

120. Plaintiff brings this Count individually and on behalf of the Classes.

121. Defendant had knowledge of the Product's defect or should have discovered the defect.

122. Defendant is the "who" that knowingly failed to disclose a material defect to Plaintiff and the Class Members at the time they purchased the Product.

123. The Product's defect is the "what" which was omitted and concealed.

124. Defendant failed to disclose the Product defect so it could sell more Products and/or sell the Product at a premium, which is "why" the information was not disclosed.

125.    The "how" of Defendant's concealment of information is by denying the existence of the defect after numerous consumer complaints or based on testing or by simply not telling consumers of the Product defect or not to be forthcoming so business would not be disrupted by a recall or negative publicity.

126.    The "where" of the concealment is in every communication, advertisement, product packaging and labels regarding the Product to the Plaintiff and the Class Members.

127.    The "when" is the failure to disclose the Product defect at any time prior to purchase of the Product by the Plaintiff or the Classes.

128.    Defendant and affiliated retailers failed to disclose the defect.

129.    These claims are based on fraudulent conduct that began before purchase and is distinct from a contract claim.

130.    Defendant aimed to portray the Product as safe for frequent and repeated use and omitted key facts concerning the potential harm of pinching consumers' fingertips against cooler, posing fingertip amputation and crushing hazards as a result of the defect in the Product.

131.    Defendant, acting through its representatives or agents, delivered the Product to its distributors and through other channels to consumers, including the Plaintiff and Class Members.

132.    Defendant, as the owner, manufacturer, marketer, and seller of the Products, had a duty to disclose because of Defendant's exclusive and/or superior knowledge concerning the Products. Defendant owed Plaintiff and Class Members a duty to disclose because the risks associated with the defective products were known and/or accessible exclusively to Defendant, who had superior knowledge of the facts; because the facts would be material to consumers; because the Defendant actively concealed or understated them; because the Defendant intended for consumers to rely on the omissions in question; and because Defendant made partial

representations concerning the same subject matter as the omitted facts. Furthermore, because the Product poses an unreasonable risk of substantial bodily injury, Defendant was under a continuous duty to disclose that the Products contained a defect known to cause harm, to whoever uses it.

133.    Defendant willfully and knowingly omitted material information regarding the quality and safety of the Products as discussed herein.  Defendant countenanced these material omissions to boost or maintain sales of the Product, and to create a false assurance that prolonged loyalty to Defendant's brand—the continued use of the Product—would not place consumers in danger. The omitted information and partial representations were material to consumers because they play a significant role in determining the value of the Product at the time of purchase.

134.    During this time, Plaintiff, and members of the Classes, were using the Products without knowing the Products could harm them due to the defect in the tow handle.

135.    Defendant failed to discharge its duty to disclose these materials facts.

136.    Although Defendant had a duty to ensure the accuracy of the information regarding the Products because such information was within the exclusive knowledge of Defendant and because the information pertains to serious health issues, Defendant failed to satisfy its duty.

137.    Defendant engaged in fraudulent and deceptive conduct by devising and executing a scheme to deceptively convey that their products were safe. Defendant's actions were done to gain a commercial advantage over competitors, and to drive consumers, like the Plaintiff and Class Members, away from purchasing a competitor's product.

138.    Plaintiff and the Classes reasonably relied on Defendant's failure to disclose insofar as they would not have purchased the defective Products manufactured and sold by Defendant had they known they possessed this risk of harming them.

139.    As a direct and proximate cause of Defendant's fraudulent concealment, Plaintiff, and the Classes, suffered damages in the amount of monies paid for the defective Product at the time of purchase since it is diminished in value or worthless, as well because of loss of use and loss of value.

140.    Plaintiff and the Class Members have suffered damages in an amount to be determined at trial that, among other things, refunds the amount Plaintiff and the Class Members paid for the Product, awards medical monitoring expenses, costs, interest, and attorneys' fees.

**COUNT VII**
**Strict Liability- Failure to Warn**
**(On behalf of Plaintiff and the Classes)**

141.    Plaintiff incorporates paragraphs 1-140 as if fully set forth herein.

142.    Defendant had a duty to warn Plaintiff and the Class Members regarding the Defect, that being the risk of harming consumers due to the defective tow handle that causes fingertip amputation and crushing hands hazards.

143.    Defendant, which is engaged in the business of selling, manufacturing and supplying the Product, placed it into the stream of commerce in a defective and unreasonably dangerous condition such that the foreseeable risks exceeded the benefits associated with the design and/or formulation of the Product.

144.    The Product supplied to Plaintiff and Class Members was defective in design and formulation and unreasonably dangerous when they left the hands of Defendant and reached consumers, including Plaintiff and Class Members, without substantial alteration in the condition in which they were sold.

145.    Defendant was in a superior position to know of the Defect, yet as outlined above, chose to do nothing when the defect became known to them.

146.    Defendant failed to provide adequate warnings regarding the risks of the Product after knowledge of the Defect was known only to them.

147.    Defendant had information regarding the true risks but failed to warn Plaintiff and members of the Classes to strengthen their warnings.

148.    Plaintiff and members of the Classes would not have purchased, chosen, and/or paid for all or part of the Products if they knew of the Defect and the risks of purchasing the Products.

149.    This Defect proximately caused Plaintiff and Class Members' damages.

150.    The Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

### COUNT VIII
### Strict Liability- Design and Formulation Defect
### (On behalf of Plaintiff and the Classes)

151.    Plaintiff incorporates paragraphs 1-150 as if fully set forth herein.

152.    The design and formulation of the Product was defective and unreasonably dangerous.

153.    The risk of fingertip amputation or crushing hazards due to the defective tow handle creates unreasonable danger.

154.    The design and formulation of the Product rendered it not reasonably fit, suitable, or safe for their intended purpose.

155.    The risk of fingertip amputation or crushing hazards contained within the Product outweighed the benefits and rendered the Product unreasonably dangerous.

156.    Defendant's Products were defective because the design and formulation of the Products included a defect which could create a risk of fingertip amputation or crushing due to the dangerous tow handle. After Defendant knew or should have known of the risk of fingertip amputation and crushing hazards due to the tow handle in the Product, Defendant continued to promote the Product as safe and effective to the Plaintiff, Class Members, and public.

157.    There are other Coolers that do not pose the risk of pinching consumers meaning that there were other means of production available to Defendant.

158.    The Product is unreasonably unsafe, and the Product should not have been sold in the market.

159.    The Product did not perform as an ordinary consumer would expect.

160.    The Defendant's design/formulation of the Product is the proximate cause of damages to the Plaintiff and the Class Members.

161.    Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as cost and attorneys' fees, available under law.

**COUNT IX**
**Negligent Failure to Warn**
**(On behalf of Plaintiff and the Classes)**

162.    Plaintiff incorporates paragraphs 1-161 as if fully set forth herein.

163.    Defendant owed Plaintiff and Class Members a duty of care and to warn of any risks associated with the Product.

164.    Defendant knew or should have known of the defect but failed to warn Plaintiff and members of the Classes.

165.    Plaintiff had no way of knowing of the Product's latent defect.

166.    Defendant's failure to warn caused Plaintiff and Class Members economic damages and injuries in the form of lost value due to risk of pinching consumers fingertips against the cooler based on the defective tow handle in the Product.

167.    Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as cost and attorneys' fees, available under law.

**COUNT X**
**Negligent Design & Formulation Defect**
**(On behalf of Plaintiff and the Classes)**

168.    Plaintiff incorporates paragraphs 1-167 as if fully set forth herein.

169.    Defendant owed Plaintiff and the Classes a duty to design and formulate the Product in a reasonable manner.

170.    The design and formulation of the Products was defective and unreasonably dangerous, causing exposure to a material with harmful effects. Thus, the Product is now worthless or diminished in value.

171.    The design and formulation of the Product caused them to not be fit, suitable, or safe for their intended purpose. The dangers of the Product outweighed the benefits and rendered the product unreasonably dangerous.

172.    There are other Coolers that do not expose the consumers to a risk of fingertip amputation and crushing hazards.

173.    The risk/benefit profile due to the design defect of the Product was unreasonable, and the Product should have had stronger and clearer warnings or should not have been sold in the market.

174.    The Defendant's negligent design/formulation of the Product was the proximate cause of damages to the Plaintiff and the Class Members.

175.    Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as cost and attorneys' fees, available under law.

**COUNT XI**
**Negligence**
**(On behalf of Plaintiff and the Classes)**

176.    Plaintiff incorporates paragraphs 1-175 as if fully set forth herein.

177.    Defendant owed a duty to consumers to produce a product that was safe for its intended use.

178.    Defendant breached this duty by producing a product that was dangerous for its intended use. Defendant knew or should have known that defective Product would cause injuries once exposed to humans and thus be worthless as safe-to-use Products.

179.    As a direct result of this breach, Plaintiff suffered injury in that Plaintiff has been deprived of their benefit of the bargain. Plaintiff's injuries were caused in fact by Defendant's breach. But for Defendant's negligent manufacture and improper oversight, Plaintiff would not have been injured.

180.    Further, Plaintiff's injuries were proximately caused by Defendant's breach. It is foreseeable that a poorly designed and formulated Cooler would cause injury, and it is foreseeable that a user would lose their benefit of the bargain if they purchased dangerous Products.

181.    Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as cost and attorneys' fees, available under law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the other members of the Classes, alleged herein, respectfully requests that the Court enter judgment in her favor and against Defendant as follows:

A.  Certifying the Classes as proposed herein, designating Plaintiff as Class representative, and appointing undersigned counsel as Class Counsel;

B.  For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

C.  Declaring that Defendant is financially responsible for notifying the Proposed Classes Members of the pendency of this action;

D.  Award all actual, general, special, incidental, statutory, consequential and punitive damages to which Plaintiff and Class Members are entitled;

E.  Scheduling a trial by jury in this action;

F.  Awarding pre and post-judgment interest on any amounts awarded, as permitted by law;

G.  For an order of restitution and all other forms of equitable monetary relief;

H.  For injunctive relief as pleaded or as the Court may deem proper;

I.  Award Costs including reasonable attorneys' fees, court costs, and other litigation expenses; and

J.  Any other relief the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, individually and on behalf of all those similarly situated, hereby requests a jury trial, pursuant to Federal Rule of Civil Procedure 38, on any and all claims so triable.

Dated: February 21, 2025

By: /s/ Stuart A. Carpey
**CARPEY LAW, P.C.**
Stuart A. Carpey
600 W. Germantown Pike, Suite 400
Plymouth Meeting, PA 19462
Tel: 610-834-6030
Fax: 610-825-7579
scarpey@carpeylaw.com
*Attorneys for Plaintiff and Putative Class*